**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 15-cv-00108-MSK-NYW

**AMERICAN GENERAL LIFE INSURANCE COMPANY,**

    Plaintiff,

v.

**HAROLD A. HENTHORN;
ESTATE OF TONI B. HENTHORN, a/k/a Toni Bertolet; and
GARY CLEXTON, as Special Administrator of the Estate of Toni B. Henthorn a/k/a Toni Bertolet,**

    Defendants.

_____

**OPINION AND ORDER BIFURCATING ACTION, ADOPTING RECOMMENDATION
TO DECLINE JURISDICTION OF INTERPLEADER CLAIM, AND
ADMINISTRATIVELY CLOSING CASE**
_____

**THIS MATTER** is before the Court on the Magistrate Judge's August 11, 2015 Report (**# 75**) that recommends that the Court abstain from exercising jurisdiction over this matter. Both Mr. Henthorn (**# 77**) and Plaintiff American General Life Insurance Company ("AGLI") (**# 78**) object. The Court heard oral argument by the parties on the Objections on November 23, 2015 and invited additional briefing (**# 87, 88**). Having considered those matters, the Court is now prepared to rule.

## FACTS

In September 2012, Toni Henthorn fell to her death while hiking with her husband, Defendant Harold Henthorn. Suspicion arose that Mr. Henthorn was responsible for Ms. Henthorn's death, and in late 2014, a federal grand jury indicted him for the murder of his wife.

1


He has since been convicted by jury verdict, sentenced to life imprisonment, and is appealing his conviction.

A probate case to administer Ms. Henthorn's estate was opened in the Colorado 18th Judicial District sitting in Douglas County. Defendant Gary Clexton was appointed as Personal Representative and Special Administrator. Mr. Henthorn, along with Ms. Henthorn's daughter, "H," are the primary heirs to her estate. The proceeds of at least two insurance policies that insured Ms. Henthorn's life have been interpleaded in the probate action.

At the time of her death, Ms. Henthorn's life was insured by Plaintiff, AGLI pursuant to a policy providing $1.5 million in benefits. Mr. Henthorn was named as the primary beneficiary on the policy; Ms. Henthorn's estate is now the contingent beneficiary. Shortly after Ms. Henthorn's death, Mr. Henthorn made a claim for benefits under the AGLI policy, but AGLI did not immediately pay over the benefits. Instead, it commenced this interpleader action. It deposited the policy proceeds with the Court and seeks: (1) a determination as to whom the AGLI policy benefits should be paid; and (2) to discharge all potential claims against it arising out of that policy. Mr. Henthorn and Mr. Clexton (on behalf of Ms. Henthorn's estate) have asserted claims to the proceeds. In addition, Mr. Henthorn has brought a counterclaim for bad faith breach of the insurance policy against AGLI for unreasonable denial and delay in payment of the policy proceeds to him.

Underlying Mr. Henthorn's claim to the AGLI policy and other life insurance policy proceeds is application of C.R.S. § 15-11-803, commonly referred to as the "Slayer Statute." It prevents persons who commit a homicide from receiving life insurance proceeds or other benefits resulting from the victim's death. Both AGLI, in this action, and Mr. Clexton, in the

probate proceeding, assert that the Mr. Henthorn is barred from receiving the benefits of insurance policies on Ms. Henthorn's life because he killed Ms. Henthorn.

The Magistrate Judge Recommended **(# 75)** that this Court abstain from exercising jurisdiction over AGLI's interpleader claim, in deference to the ongoing probate proceedings in state court.[1]  Mr. Henthorn and AGLI both objected to the Recommendation, albeit for different reasons.

The Court scheduled oral argument on the Objections and, at that argument, proposed bifurcating the interpleader claim from Mr. Henthorn's counterclaim, declining to exercise jurisdiction on the former (and thus requiring AGLI to seek interpleader in the probate action), and administratively closing this case with regard to the latter pending the outcome of the appeal of Mr. Henthorn's conviction on murder charges.  The Court invited the parties to file briefs. AGLI filed a brief **(# 87)** that continues to oppose abstention on the interpleader claim.  Mr. Clexton filed a brief **(# 88)** favoring abstention.

## ANALYSIS

### A. Bifurcation

Before turning to the question of whether the Court should decline to exercise its jurisdiction with regard to the AGLI's interpleader claim, the Court must first determine whether it is appropriate to bifurcate it from Mr. Henthorn's counterclaim for bad faith breach of insurance contract.  Bifurcation is left to the Court's discretion, to be exercised where appropriate to avoid prejudice or to further the convenient, expeditious, and economical resolution of the issues.  *Sterling Const. Management, LLC v. Steadfast Ins. Co.*, 280 F.R.D. 576, 580 (D.Colo. 2011).

---

[1] The Recommendation did not address Mr. Henthorn's counterclaim against AGLI.

It is worth noting at the outset, that the legal nature of AGLI's interpleader claim is different from Mr. Henthorn's bad faith breach of insurance contract counterclaim. The interpleader claim is brought *in rem.* The claim is for the determination of entitlement to a *res* — the benefits under the AGLI policy. As to this claim, AGLI is a party only in nominal terms, and ordinarily, would cease to participate in the action once interpleader is approved and the funds are deposited with the court. With regard to the interpleader claim, there is no reason for AGLI to participate in pretrial discovery or motion practice. For this claim, the issue to be determined is whether Mr. Henthorn is barred from receiving such benefits under Colorado's Slayer Statute — a dispute between Mr. Henthorn and Mr. Clexton, the special administrator of the probate estate.

In contrast, Mr. Henthorn's bad faith counterclaim against AGLI is an *in personam* claim. The counterclaim seeks a monetary judgment against AGLI for its failure to act properly after Ms. Henthorn's death. As to this claim, AGLI is an active party that would be expected to take and propound discovery, participate in motion practice, and otherwise remain in the litigation until the counterclaim is resolved.

Both the interpleader claim and the bad faith counterclaim can be affected by application of the Slayer Statute, but they are not affected the same way. Application of the Slayer Statute will resolve the interpleader claim with a determination that the AGLI policy benefits are awarded to either Mr. Clexton (the probate estate) or Mr. Henthorn. In contrast, the effect of the Slayer Statute on determination of the bad faith counterclaim is unclear and is not dispositive. This is because the counterclaim focuses on AGLI's behavior once it received Mr. Henthorn's

claim to insurance proceeds. To the extent that the Slayer Statute comes into play,[2] its significance is not upon whether Mr. Henthorn is entitled to the policy benefits, but rather, on the reasonableness of AGLI's *belief* about whether Mr. Henthorn was entitled to benefits when it denied Mr. Henthorn's claim. Although there may be common questions of fact underlying the determination of whether the Slayer Statute applies and whether AGLI acted in good faith after Ms. Henthorn's death, resolution of the interpleader claim and the counterclaim are not so intertwined that they are dependent upon each other.

Accordingly, the Court finds it appropriate to bifurcate AGLI's interpleader claim from Mr. Henthorn's counterclaim for bad faith breach of contract. Upon bifurcation, the Court then turns to the question of how each claim should proceed.

B. **Interpleader claim**

It is undisputed that this Court has subject-matter jurisdiction with regard to AGLI's interpleader claim under 28 U.S.C. § 1332. As to this claim, the only remedy sought by AGLI is a declaratory one — releasing it from any further obligations to the other parties. In such circumstances, the federal courts' "virtually unflagging obligation to exercise its jurisdiction" is not present. *Sinclair Oil Corp. v. Amoco Production Co.*, 982 F.2d 437, 440 (10th Cir. 1992).

---

[2] The precise interplay between the Slayer Statute and a bad faith breach of contract claim under Colorado law is unclear. Mr. Clexton contends that a determination that one is barred under the Slayer Statute from recovering insurance benefits results from the analytical fiction that the slayer is treated as having predeceased the victim. As a consequence, the slayer has no rights under the insurance policy. If that is the case, then the insurance company would owe no duty to the slayer with regard to a claim made after the victim's death. However, Colorado law generally suggests that an insurer has a duty to properly administer claims even if it is ultimately determined that the claimant is not entitled to any benefits under the policy. *See e.g. Dunn v. American Family Ins.*, 251 P.3d 1232, 1235 (Colo.App. 2010) ("Colorado recognizes the viability of a claim of bad faith even if the express terms of the contract have been honored by the insurer"). If this concept prevails, arguably a slayer who is barred from recovery under the policy may nevertheless be entitled to a prompt determination to that effect. Of course, it is hard to imagine what loss might arise from a delay in determining a denial of benefits.

Instead, the Court possesses "wide discretion in refusing to hear duplicative declaratory proceedings." *Id.*; *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494-95 (1942).

In deciding whether to exercise jurisdiction, a federal court considers at least five factors: (i) whether a declaratory action would settle the controversy; (ii) whether it would serve a useful purpose in clarifying relations; (iii) whether the declaratory remedy is being used for procedural fencing; (iv) whether entertaining the federal action would increase friction between the state and federal courts; and (v) whether there is an alternative remedy that is better or more effective than the federal action. *St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995).

Considering these factors, this Court finds it appropriate to decline to exercise jurisdiction over AGLI's interpleader claim in deference to AGLI pursuing it in the state probate proceeding. The issue to be resolved in AGLI's interpleader claim here is identical to that raised by at least two other insurance companies that have interplead insurance proceeds in the probate proceeding — namely, whether Mr. Henthorn is subject to the Slayer Statute or not. There is little benefit to having <u>two</u> courts (this Court and the probate court) considering that question simultaneously or sequentially. Indeed, there is a risk that doing so could generate inconsistent results.[3] Of course, AGLI is not currently a party in the probate court proceeding. Thus, the first factor (usefulness of a declaratory judgment) tips slightly in favor of this Court retaining AGLI's claim, but the second factor tips strongly against doing so.

---

[3] Consider the possibility that Mr. Henthorn successfully appeals his conviction and is ultimately acquitted upon retrial. At that point in time, Mr. Clexton would likely invoke C.R.S. § 15-11-803(7)(b), requesting a determination of Mr. Henthorn's culpability under the more generous "preponderance of the evidence" standard. It is conceivable that, if this Court and the probate court proceed to resolve that question simultaneously, they could reach different conclusions.

The Court cannot say that AGLI is using the instant action for "procedural fencing," in the classic sense, but the Court does note that AGLI commenced this action in federal court nearly two years after the state probate case was opened (although it is unclear from the record when the other insurers sought to interplead the benefits under their policies or the date on which Mr. Clexton first invoked the Slayer Statute in that case). Although the Court does not accuse AGLI of proceeding in bad faith here, AGLI has not articulated any meaningful substantive reason why interpleading the policy proceeds in federal court is preferable to doing so in the probate action. Thus, the third factor is essentially neutral.

The fourth and fifth factors both tip substantially in favor of declining jurisdiction. As noted above, maintaining parallel proceedings poses some risk of inconsistent determinations, with substantial and duplicative cost to both Mr. Henthorn and Mr. Clexton who must pursue their positions twice — once with regard to the AGLI policy and again with regard to the other life insurance policies.

There is a clear alternative that is more effective than two parallel suits — declining jurisdiction in favor of AGLI interpleading the proceeds from the AGLI policy in the probate court. The Court is cognizant that this would require AGLI to petition the probate court and that the probate court could deny such a request. But, given that the proceedings in the probate court are essentially stalled pending the conclusion of Mr. Henthorn's appeal (as they would be here as well), it seems highly unlikely that the probate court would refuse to allow AGLI to join that action. And although the Court is sympathetic to AGLI's concern that this will cause it to incur some additional costs, such costs pale in comparison to the costs to two court systems, as well as those which will be incurred by Mr. Henthorn and Mr. Clexton, that come with two separate suits.

Accordingly, the Court agrees with the Magistrate Judge that it is appropriate for this Court to decline to exercise jurisdiction over AGLI's interpleader claim, and that such claim is better brought by AGLI in the current probate court proceeding. Thus, the Court abstains from exercise of its jurisdiction over the interpleader claim.

### C. Counterclaim

As to Mr. Henthorn's counterclaim against AGLI, both parties appear to be content to defer further consideration of the matter until such time as the criminal proceedings against Mr. Henthorn reach a point of finality.[4] The Court finds it appropriate, upon bifurcation, to

---

[4] AGLI appears to continue to stand on its existing motion to dismiss Mr. Henthorn's counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) **(# 28)**. Were the Court to reach that motion on its merits — assuming, as it must, that Mr. Henthorn will ultimately succeed in resisting application of the Slayer Statute — the Court would deny it. Mr. Henthorn has alleged that he made a claim for benefits under the policy on September 13, 2013. At that point, AGLI was obligated to promptly investigate the claim and, barring some reasonable basis to believe that the claim was invalid, promptly pay it. *See generally Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985). AGLI points to three events that, it contends, created a reasonable basis for it to doubt Mr. Henthorn's entitlement to benefits.

The first is the December 18, 2012 autopsy report for Ms. Henthorn, which notes that "homicide cannot be excluded" as a cause of death. The Court cannot say that, as a matter of law, a coroner's inability to exclude homicide as a cause of death is, of itself, a reasonable basis for an insurer to refuse to pay life insurance benefits to a claimant. Certainly, AGLI cites to no authority for such a proposition.

The second is that on March 14, 2014, Mr. Clexton sent AGLI an order from the state court suspending Mr. Henthorn as Ms. Henthorn's Personal Representative and instead appointing Mr. Clexton as Special Administrator of her estate. The order makes no particular findings about Mr. Henthorn nor makes any apparent suggestion that he might be culpable in Ms. Henthorn's death. (Arguably, the Petitioner's motion contains accusations against Mr. Henthorn, but AGLI's motion does not mention Mr. Clexton sending a copy of that motion.) Thus, it is difficult to see how this document, of itself, gave AGLI a reasonable basis to doubt Mr. Henthorn's entitlement to benefits. Moreover, by this point in time, AGLI had delayed paying Mr. Henthorn's claim for over six months, with no apparent justification. Mr. Henthorn may be able to show that such a delay was itself unreasonable, making his claim colorable.

The third event is that Mr. Henthorn was arrested on or about November 6, 2014 and charged with Ms. Henthorn's death. Assuming this event finally gave AGLI a reasonable basis to doubt that Mr. Henthorn was eligible for benefits under the policy due to the operation of the Slayer Statute, the Court notes that this occurred more than two full years after Mr. Henthorn initially sought payment of the benefits. A jury could conclude that a two-year delay in paying

administratively close this case until such time as the criminal case against Mr. Henthorn is conclusively resolved. A closure is preferable to a stay because it recognizes the indefiniteness of the period of time it will take for the criminal proceedings to conclude, spares the parties nearly all of the obligation to monitor the status of the case, and alleviates certain administrative burdens on the Court in maintaining an open-yet-stayed case. If the criminal proceedings ultimately resolve in Mr. Henthorn's favor (or, in the event that Mr. Henthorn chooses to assert a colorable argument that he can recover on the counterclaim regardless of the outcome of the Slayer Statute proceedings), he may move, upon notice to AGLI, to reopen the case.

## CONCLUSION

Accordingly, the Court **BIFURCATES** AGLI's interpleader claim from Mr. Henthorn's counterclaim. The Court **DISMISSES** AGLI's interpleader claim, and declines to exercise jurisdiction over it in deference to AGLI asserting its interpleader claim in the pending probate action. Funds previously deposited by AGLI will remain under the control of the Clerk of the Court pending an Order of the State Court or request of AGLI to transfer them. The Court then **ADMINISTRATIVELY CLOSES** this case, subject to any party moving, upon good cause, to reopen it.

Dated this 11th day of January, 2016.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge

---

Mr. Henthorn's claim, despite the absence of any prior indicia of his ineligibility, was unreasonable.
    Accordingly, the Court would deny AGLI's motion to dismiss the counterclaim.